UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CROSSBOW CEMENT SA,

                                                     08 Civ. 5074 (HB)

                Plaintiff,             **NOTICE OF MOTION TO
                                                   VACATE THE ATTACHMENT**

      -against-

MOHAMED ALI SALEH AL-HASHEDI &
BROTHERS

               Defendant.
-----------------------------------------------------------X

      Upon the annexed Declaration of Stephen Jacobson and accompanying Memorandum of Law, and all pleadings heretofore had herein, Defendant will move this Court before the Honorable Harold Baer, United States Courthouse, 500 Pearl Street, Courtroom 23B, New York, New York, on the _____ day of _____, 2008 at _____ o'clock in the __.m, or as soon thereafter as the parties can be heard, for an Order pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, vacating the Order of June 3, 2008, for lack of subject matter jurisdiction, and Process fo Maritime Attachment and Garnishment obtained and served by the Plaintiff pursuant thereto.

Dated: New York, New York
         July 9, 2008

                                                        BERNSTEIN & BERNSTEIN, L.L.P.
                                                        Attorneys for Defendant

                                 By:  _____
                                                  STEPHEN JACOBSON (SJ 3615)
                                                  BERNSTEIN & BERNSTEIN, L.L.P.
                                                  19 West 44th Street, Suite 1500
                                                  New York, New York 10036

(212) 608-0053 - phone
(212) 608-0054 - fax
stephjacob@aol.com

To:   Law Offices of Rahul Wanchoo
      Attorneys for Plaintiff
      Empire State Building
      350 Fifth Avenue, 59th Floor
      New York, New York 10118
      (646) 593-8866 - phone
      (212) 618-0213 - fax
      rwanchoo@wanchoolaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CROSSBOW CEMENT SA

                                                  08 Civ. 5074 (HB)

                  Plaintiff,         **DECLARATION OF STEPHEN JACOBSON IN SUPPORT OF DEFENDANT'S MOTION TO VACATE THE ATTACHMENT**

MOHAMED ALI SALEH AL-HASHEDI &
BROTHERS,

                  Defendant.
------------------------------------------------------------X

      STEPHEN JACOBSON, pursuant to 28 U.S.C § 1746 hereby declares that the following is true and correct under penalty of perjury:

      1.      I am an associate of the firm of BERNSTEIN & BERNSTEIN, LLP, attorneys for the defendant herein, MOHAMED ALI SALEH AL-HASHEDI & BROTHERS (hereinafter Al-Hashedi" or "Defendant") and I am admitted to practice before this Court.  I submit this declaration in support of Al-Hashedi's Motion to Vacate the Attachment on the grounds set forth in the accompanying memorandum of law and the facts set forth in the documents annexed to the defendant's motion papers.

      2.      The parties entered into a sale contract whereby Al-Hashedi purchased a quantity of Chinese bagged Portland cement from plaintiff Crossbow Cement.  The contract provided for delivery in Aden.  However, at the request of the defendant, the plaintiff agreed to discharge cargo at Berbera and Hodeidah, in exchange for which the sellers agreed to pay an additional lump sum.

      3.      Annexed hereto as Exhibit "1" is the sales contract as evidenced by pro-forma invoice number 07091/05, dated July 27, 2005.

    4.    Annexed hereto as Exhibit "2" is the sales contract as evidenced by pro-forma invoice number 09016/05, dated September 26, 2005, wherein the parties agreed to the cargo being discharged at Berbera and Hodeidah in exchange for a lump sum payment by the defendant.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       July , 2008

                                      STEPHEN JACOBSON (SJ-3615)

# EXHIBIT 1

# FAX OUT
# CROSSBOW CEMENT SA

### Swiss Trading Company for Portland Cements



6 avenue de Frontenex
PO Box 6246
1211 Geneva 6 / Switzerland
Telephones (022) 786 45 11 / 77
Telefax (022) 786 69 79
Telex 413.610 MERP CH

MOHAMED ALI SALEH AL-HASHEDI & BRO
PO BOX 5499

TAIZ / YEMEN REPUBLIC

PROFORMA
INVOICE N° 07091/05.

GENEVA, JULY 27TH, 2005.
PHE/BDD

FOR : ORDINARY PORTLAND CEMENT, QUALITY GB175-1999 GRADE 32,5R, PACKED IN STRONG POLYPROPYLENE BAGS (1 PLY KRAFT PAPER INNER), IN SLING-BAGS OF 40 BAGS EACH.
ORIGIN : CHINA.

| | UNIT PRICE | TOTAL PRICE |
|---|---|---|
| QUANTITY : ABOUT 25.000 MT<br>-SHIPMENT IN ONE LOT WITHIN ABOUT 35 DAYS FROM NOTIFICATION DATE OF LC IN GOOD ORDER WITH "CREDIT SUISSE" IN GENEVA/SWITZERLAND,<br>-ENGLISH LAW TO APPLY/LONDON ARBITRATION CLAUSE,<br>-DISCHARGING RATE : MINIMUM 1.500 MT PWWD FHEX UU,<br>TIME TO START COUNTING AS PER "GENCON" C/P TERMS,<br>-DEMURRAGES : US$20.000 PER DAY OR PRORATA, PAYABLE EVERY 3 DAYS IN ADVANCE,<br>-PAYMENT BY IRREVOCABLE CONFIRMED TRANSFERABLE LETTER OF CREDIT PAYABLE AT SIGHT WITH "CREDIT SUISSE" IN GENEVA/SWITZERLAND AGAINST PRESENTATION OF :<br>AA-COMMERCIAL INVOICES,<br>BB-FULL SET OF 3/3 "CHARTER-PARTY" MARINE BILLS OF LADING MARKED "FREIGHT PREPAID" "FREE OUT",<br>CC-ORIGIN CERTIFICATE,<br>DD-ANALYSIS CERTIFICATE,<br>EE-PACKING-AND-WEIGHT-LIST,<br>FF-INSPECTION CERTIFICATE FOR QUALITY/QUANTITY ISSUED BY RELEVANT CHINESE AUTHORITIES.<br>SPECIAL CLAUSES :<br>1) 10% +/- ALLOWED ON AMOUNT AND QUANTITY,<br>2) "CHARTER-PARTY" BL/S AUTHORIZED,<br>3) ALL BANK CHARGES/CONFIRMATION/COMMISSIONS OUTSIDE "CREDIT SUISSE" FOR APPLICANTS/OPENERS' ACCOUNT.<br>4) THIRD PARTY DOCUMENTS ACCEPTABLE.<br>-VALIDITY FOR CONFIRMATION : JULY 31ST, 2005.<br>-LAST TIME FOR LC OPENING : AUGUST 7TH, 2005.<br>********************* | US$ 72.--<br>PER MT CFR FREE OUT ADEN (1 SAFE PORT). | US$ 1.800.000.-- |

CROSSBOW CEMENT SA

MOHAMED ALI SALEH AL-HASHEDI & BRO
M.A.S.H
TAIZ - YEMEN REPUBLIC

# EXHIBIT 2

# CROSSBOW CEMENT SA

Swiss Trading Company for Portland Cements



## FAX OUT

6, avenue de Frontenex
P.O. Box 8246
1211 Geneva 6 / Switzerland
Telephones (022) 786 4611/77
Telefax (022) 786 69 79
Telex 413 510 MERP CH

MOHAMED ALI SALEH AL HASHEDI AND
P.O. BOX 5499
TAIZ, YEMEN REPUBLIC

INVOICE N° 09016/05.

GENEVA, SEPTEMBER 26TH, 2005
PHE/BDD

| | |
|---|---|
| REF : SHIPMENT OF 27.500 M/TONS CHINESE ORDINARY PORTLAND CEMENT GB 175-1999 GRADE 32,5R BY MV "SEABOSS 1" FROM LONGKOU/CHINESE PORT TO ADEN PORT/YEMEN AS PER BL/S DATED 3/9/2005. LIC NO TS00385 | TOTAL PRICE |
| FOR : CHANGING DISCHARGING PORT AS FIRST BERBERA/SOMALIA FOR 5.000 M/TONS, WHERE TIME TO START COUNTING AS PER "GENCON" CHARTER-PARTY TERMS, WHERE FULL D/A PAYABLE BY BUYERS TO THEIR APPOINTED LOCAL SHIPPING AGENTS, INCLUDING ALL TAXES/DUES/CHARGES/LEVIES AND EXPENSES WHATSOEVER. DISCHARGING RATE MINIMUM 1.500 TONS PER WWD FHEX UU, TIME STARTING TO COUNT AS PER "GENCON", DEMURRAGES : US$20.000.- PER DAY OR PRORATA, PAYABLE BY BUYERS TO SELLERS EVERY 3 DAYS IN ADVANCE, THEN BALANCE OF 22500 M/TONS DISCHARGED AT SECOND PORT HODEIDAH/YEMEN WHERE D/A FOR SHIPOWNERS' ACCOUNT. DISCHARGING RATE AT HODEIDAH : 1.500 M/T PWWD FHEX UU, TIME TO START COUNTING AS PER "GENCON" CHARTER-PARTY TERMS, DEMURRAGES : US$ 20.000.- PER DAY OR PRORATA, PAYABLE BY BUYERS TO SELLERS EVERY 3 DAYS IN ADVANCE. | |
| PAYABLE BY TELEGRAPHIC REMITTANCE ON 27TH, VALUE 27TH TO : CREDIT-SUISSE 17, RUE DE LAUSANNE 1211 GENEVA 70/SWITZERLAND SWIFT : CRESCHZZ12A IBAN : CH09 0425 1067 6636 6200 0 FAVOUR ACCOUNT NUMBER 676636-62. | LUMPSUM US$ 75.000.- |

CROSSBOW CEMENT SA

MOHAMED ALI SALEH AL HASHEDI & BRO.
M.A.S.
TAIZ - YEMEN REPUBLIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CROSSBOW CEMENT SA

                                      08 Civ. 5074 (HB)

                        Plaintiff,

MOHAMED ALI SALEH AL-HASHEDI &
BROTHERS,

                        Defendant.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO VACATE THE ATTACHMENT**

      Defendant, Mohamed Ali Saleh Al-Hashedi & Brothers (hereinafter "Al-Hashedi" or "Defendant"), by and through its undersigned counsel, Bernstein & Bernstein, L.L.P., respectfully submits this Memorandum of Law in Support of its Motion to Vacate the Maritime Attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). The Plaintiff, Crossbow Cement SA (hereinafter "Crossbow" or "Plaintiff") has failed to allege a cognizable claim in admiralty as required under Rule B. As such, Al-Hashedi's motion to vacate the attachment for lack of subject matter jurisdiction should be granted.

**FACTS**

      Plaintiff, Crossbow, was and still is a business entity organized under foreign law with an address at 6 Avenue de Frontenex, Geneva, Switzerland. Defendant, Al-Hashedi, is a business entity organized under the laws of a foreign country with an address in Taiz, Republic of Yemen.

      The underlying dispute arises from Crossbow's claim that Al-Hashedi has breached two sales contracts. *See Plaintiff's Verified Complaint, at ¶ 6.* The principal objectives of the

contracts at issue, however, are not directly related to the operation of a vessel or its navigation or the transportation of goods by sea, ie., they are not maritime in nature. They are, in fact, contracts for the sale of cement. Specifically, Crossbow and Al-Hashedi entered into two sales contracts, as evidence by pro-form invoices, by which Al-Hashedi purchased a quantity of Chinese bagged Portland cement from Crossbow. Al-Hashedi originally agreed to take delivery of the cement in the Port of Aden. The first contract, pro-forma invoice number 07091/05, was dated July 27, 2005. The parties thereafter agreed to the cargo being discharged at Berbera and Hodeidah in exchange for a lump sum payment by the defendant, as evidenced by the second pro-forma invoice, number 09016/05, dated September 26, 2005. *See Contracts annexed to the Declaration of Stephen Jacobson as Exhibits "1" and "2" respectively*. The contracts provided for delivery of the cement by ship, and included a demurrage clause. Upon information and belief, Crossbow entered into a charter party with the owner of a vessel, the M/V Seaboss 1, in order to ship the cement originally to Aden, later changed to Berbera and Hodeidah.

The M/V Seaboss 1 arrived at Berbera on September 30, 2005. Unfortunately, there was a public holiday in Berbera from Saturday, October 1, 2005 until Tuesday, October 4, 2005 and as a result, the discharge of the cargo was not begun until October 5, 2005. As a result of the delay, demurrage allegedly accrued.

The sales contracts provided that disputes were to be referred to arbitration in London pursuant to English Law. Crossbow submitted the matter to Arbitration in London and an arbitration award was issued in Crossbow's favor. *See Plaintiff's Verified Complaint at ¶¶ 7 - 8.*

On June 3, 3008, Crossbow applied for and was granted an ex parte maritime

attachment order under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. On or about June 23, 2008, funds in the amount of $17,365.13 were restrained at the HSBC Bank of New York. Al-Hashedi makes the instant motion to vacate the attachment as Crossbow has failed to allege a maritime claim as required under Rule B.

## ARGUMENT

### THE ATTACHMENT SHOULD BE VACATED
### AS THERE IS NO ADMIRALTY JURISDICTION

**A.     Rule B maritime attachment can be invoked only when admiralty jurisdiction exists over a maritime claim**.

Rule B maritime attachment can be invoked only when a plaintiff files a verified complaint sufficient to make a prima facie showing that the plaintiff has a valid maritime claim against the defendant in the amount sued for. *See Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS and Ocean Rig 2 AS*, 78 F.Supp2d 162, 166 (S.D.N.Y. 1999), *citing* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, §21-2 at 471 (2d ed. 1999). Thus, a plaintiff seeking a maritime attachment order under Rule B must properly allege a maritime claim. "The absence of maritime jurisdiction would prove fatal to [a] plaintiff's attachment." *Maritime Petroleo*, 78 F.Supp. at 166. As will be shown herein, Crossbow has failed to make a prima facie showing that it has a valid maritime claim.

**B.     The Plaintiff has the burden of establishing the federal court's subject matter jurisdiction over its claim**.

The plaintiff bears the burden of establishing that the federal court has subject matter jurisdiction over its claims. As shown above, in Rule B cases a plaintiff necessarily relies on the admiralty jurisdiction of the federal court. Therefore, the plaintiff bears the burden of

showing that it has a maritime claim.

Furthermore, subject matter jurisdiction of the court must be affirmatively proved. The court may not infer subject matter jurisdiction. *See Shipping Financial Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d. Cir. 1998)(stating that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.")

Crossbow has alleged in ¶1 of its Verified Complaint that its claim falls within the admiralty jurisdiction of the court. The substance of Crossbow's claim, however, involves the breach of a sales contract wherein Crossbow sold a quantity of cement to Al-Hashedi. ¶¶4 - 6. The very basis of the claim, breach of contract on a sale, negates Crossbow's allegation of admiralty jurisdiction. As will be shown below, Crossbow has failed to make a prima facie showing that its claim against Al-Hashedi is within the court's admiralty jurisdiction.

### C. Admiralty jurisdiction does not extend to sales contracts between parties which are not maritime in nature.

Admiralty jurisdiction is provided for under 28 U.S.C. §1333(1) which affords district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." Absent such requisite admiralty or maritime jurisdiction, a Rule B maritime attachment is void. *Sea Transport Contractors, Ltd. v. Industries Chemique Du Senegal*, 411 F.Supp.2d 386, 392 (S.D.N.Y. 2006); *see also Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 236, 268 (2d. Cir. 2002). This jurisdictional grant extends to contracts "which relate to the navigation, business or commerce of the sea. *Sirius Ins. Co. Ltd. v. Collins*, 16 F.3d 34, 36 (2d Cir. 1994). While courts have found the boundaries of admiralty jurisdiction over contracts difficult to draw, the United

States Supreme Court held in *Norfolk Southern Railway Co. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 21-22 (2004) that the ultimate determination of whether admiralty contract jurisdiction is to be conferred turns "on whether the principal objective of a contract is maritime commerce." Id. *See also Folksamerica Reinsurance Company v. Clean Water of New York, Inc*., 413 F.3d 307, 315 (2d. Cir. 2005).

In this case, the contracts at issue are not maritime contracts because their primary objective was the sale of cement, not the transportation of goods by sea. In a case very much on point, *Aston Agro-Industrial AG v. Star Grain LTD*., 2006 WL 3755156 (S.D.N.Y. 2006), Judge Daniels granted the defendant's motion to vacate the ex parte maritime attachment and garnishment order on the grounds that the Court lacked admiralty or maritime jurisdiction.

In *Aston*, the parties entered into two separate contracts under which defendant Star Grain agreed to purchase quantities of Russian wheat from Aston. The contracts also contained certain clauses related to demurrage, which, on their face, did not assign demurrage liability to either party, but rather set forth how the demurrage rate would be calculated and the time within any demurrage claim should be settled. The plaintiff, Aston, entered into charter parties with the owners of vessels for the shipment of wheat to Star Grain. The wheat was shipped, but because of water damage, authorities in Egypt denied permission for the damaged cargo to be discharged and Star Grain prevented the damaged goods to be exported until it had received payment for the damage. As a result, the ships were held in port for two months and demurrage accrued, for which Aston demanded compensation. Pursuant to the contracts, the parties arbitrated their dispute in London at which time the arbitrators found in favor of Aston. Seeking to recover on its arbitration award, Aston sought and obtained a maritime attachment

against Star Grain, which then filed the motion to vacate.

In deciding to grant Star Grain's motion to vacate the attachment, Judge Daniels determined that the contracts were not maritime "because their primary objective was not the transportation of goods by sea. Instead, their primary objective was, undoubtedly, the sale of wheat. That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipped via airplane." *Id.*

Judge Daniels also took note of the fact that the contracts were not between a seller and a shipper but that it was the plaintiff, Aston, that entered into charter parties with the vessel owners to accomplish the shipment of the wheat. Judge Daniels noted that "it was the primary objective of those contracts [charter parties] to transport the wheat by sea." Thus, the charter parties between the seller and the shipper were maritime contracts, but the contracts between the seller and buyer were decidedly not. Id.

Likewise, in this matter, the primary objective of the contracts at issue was the sale of cement, not the transportation of the cement by sea. After all, the defendant's name is Crossbow **Cement** SA. The defendant is in the business of selling cement, not shipping. As per the plaintiff's own Verified Complaint, the plaintiff "was the Seller of a cargo of about 25,000 metric tons of Chinese and the defendant herein "was the buyer of a cargo of cement". *See Plaintiff's Verified Complaint ¶¶2 -3*. Likewise, as in *Aston*, the fact that the cement was transported on ship does not make the contracts at issue maritime in nature. It is also the case that this matter does not involve a contract between a seller (or buyer) and a ship owner. In this case, as in *Aston*, it was the plaintiff/seller Crossbow that arranged for shipment of the cement on

board the M/V Seaboss 1.

In *Aston*, , the plaintiff contended that maritime jurisdiction applied because the particular claims, involving demurrage, only involved the maritime portions of the contract. The court found, however, that the contracts created no maritime obligations on Star Grain, let alone any maritime obligations that were severable from the non-maritime obligations. The court in *Aston* found that Star Grain's only obligations were to pay the agreed upon price and to begin discharging the wheat when the ships arrived in port. "Moreover, the specific clauses of the contracts that Aston enforced, the so-called 'demurrage clauses,' do not explicitly contain any obligation on either party to compensate the other for demurrage owed to the vessel. Instead, these clauses merely set forth the rate at which any demurrage charge would be calculated should it occur." *Id.*

Likewise, in this matter, the contracts created no obligation on behalf of Al-Hashedi other than to pay the agreed upon price for the cement pursuant to the payment terms and to discharge the cement pursuant to the discharge terms. Furthermore, the demurrage clauses likewise did not explicitly obligate either party to compensate the other for demurrage but merely set forth rates at which demurrage would be calculated and payable should it occur. As such, this case is, again, completely on point with *Aston*.

In sum, in the instant case a seller of cement (Crossbow) is attempting to recover damages on a contract from the buyer of cement (Al-Hashedi) as there were problems with delivery. The fact that the delivery happened to take place on sea does not change the fact that the primary purpose of the contract was the sale of cement, not maritime commerce.

As the primary objective of the contracts at issue was the sale of cement, not

maritime commerce, there is no maritime jurisdiction in this matter.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, it is specifically requested that this Court grant defendant, Mohamed Ali Saleh Al-Hashedi & Brothers' motion to vacate the attachment.

Dated: New York, New York
       July 9, 2008

          BERNSTEIN & BERNSTEIN, L.L.P.
          Attorneys for Defendant

By: _____
    STEPHEN JACOBSON (SJ 3615)
    BERNSTEIN & BERNSTEIN, L.L.P.
    19 West 44th Street, Suite 1500
    New York, New York 10036
    (212) 608-0053 - phone
    (212) 608-0054 - fax
    stephjacob@aol.com

To:    Law Offices of Rahul Wanchoo
       Attorneys for Plaintiff
       Empire State Building
       350 Fifth Avenue, 59th Floor
       New York, New York 10118
       (646) 593-8866 - phone
       (212) 618-0213 - fax
       rwanchoo@wanchoolaw.com