UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CROSSBOW CEMENT SA

      Plaintiff,

  - against -

MOHAMED ALI SALEH AL-HASHEDI &
BROTHERS

      Defendant.

------------------------------------------------------------X

ECF CASE

08 Civ. 5074 (HB)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE MARITIME ATTACHMENT**

          **LAW OFFICES OF RAHUL WANCHOO**
          Attorneys for Plaintiff
          350 Fifth Avenue, 59th Floor
          New York, New York 10118
          Phone: (646) 593-8866
          Fax:  (212) 618-0213
          E-mail: rwanchoo@wanchoolaw.com

Of Counsel:
Rahul Wanchoo, Esq.

## PRELIMINARY STATEMENT

Defendant, Mohamed Ali Saleh Al-Hashedi & Brothers (hereinafter "Al-Hashedi" or "Defendant") was determined by a maritime arbitrator to owe Plaintiff, Crossbow Cement SA (hereinafter "Crossbow" or "Plaintiff") for demurrage incurred during discharge of the Vessel M/V SEABOSS 1 (hereinafter "Vessel").  Now, in an attempt to frustrate Crossbow's collection of this debt, Al-Hashedi seeks vacatur of the maritime attachment arguing that its debt arises out of a sales contract, and not a maritime debt. Defendant is wrong.

The sales contract between Crossbow and Al-Hashedi called for Al-Hashedi paying $72 per metric ton for cement on "CFR" (cost & freight) terms.  What this means is that the price (i.e., $72 per metric ton) included the cost to transport the goods from the load port to the discharge port.  Defendant satisfied this obligation.  However, the sales contract also incorporated a "demurrage" term, which is a payment to a Vessel owner arising out of cargo operations that take longer than an agreed upon "laytime".  Due to the inability to complete discharge within the agreed allowed laytime in the contract, demurrage became due.  This demurrage was derived and calculated by reference to Crossbow's charter party/contract of carriage with the Vessel owner.

It is well established that the obligation to pay demurrage is a maritime obligation, and it cannot seriously be questioned that Crossbow's claim is a maritime claim since the goods were shipped on an ocean-going vessel and demurrage was calculated pursuant to the charter party terms which were incorporated in the sales contract.

## STATEMENT OF FACTS

Crossbow entered into a contract to sell a quantity of about 25,000 metric tons of cement to Al-Hashedi on CFR terms. *See* Pro Forma Invoice dated July 27th, 2005 a copy of which is attached as Exhibit A to the Declaration of Rahul Wanchoo dated July 22, 2008 ("Wanchoo Decl."). Under the sales contract, Crossbow was obligated to charter and pay for a Vessel to carry the cement from Longkou, China to Aden. To fulfill its obligations, Crossbow chartered the M/V SEABOSS I. *See* GENCON Charter dated August 13, 2005, Wanchoo Decl., Ex. B. Pursuant to this charter, the cement was to be discharged from the Vessel at a rate of 1500 metric tons per "weather working day". If discharge exceeded this agreed upon "laytime", Crossbow was obligated to pay the Vessel owner "demurrage" at the rate of **$20,000 per day**. *See* Charter at cl. 6 and box 18, Wanchoo Decl., Ex. B. These critical charter party terms were incorporated in the sales contract. Specifically, the contract provided for the charter party discharge rate of 1500 metric tons per day, and demurrage at the rate of $20,000 per day.

Crossbow fulfilled its obligations to load and deliver the cement to the ports designated by Al-Hashedi.[1] The Vessel was delayed at the first discharge port due to a public holiday. As such, the cargo was not discharged within the agreed upon laytime. Crossbow submitted a demurrage statement to Al-Hashedi prepared in reliance on the

---

[1] After loading, Al-Hashedi requested that the cement be discharged not at Aden, but at two different ports. Because the price term in both the sales contract and Crossbow's charter were calculated based on discharge at Aden, this change required additional compensation to the Vessel owner. To account for this increase in price, Crossbow charged a lump sum extra of $75,000 to Al-Hashedi.

3

"statement of facts" prepared by the master of the Vessel SEABOSS I.[2] *See* Final Arbitration Award at ¶ 23, Wanchoo Decl., Ex. C. As stated, both the charter party and the sales contract contained the **same** discharge rate (1500 per weather working day) and demurrage rate of $20,000 per day.

Defendant refused to pay the demurrage owed to Crossbow, and Crossbow commenced arbitration in London. Mr. Mark Hamsher, to whom the dispute was referred, is a member of the London Maritime Arbitrator's Association and his Final Arbitration Award dated December 6, 2006 dealt with only demurrage, which is a maritime claim. As demonstrated by the Final Arbitration Award (Wanchoo Decl., Ex. C), Al-Hashedi did not dispute the accuracy of the statement of facts or that demurrage was due. Instead, Al-Hashedi's tactics consisted of slander, claiming that Crossbow was "dishonest"; and dubious conduct, submitting a *forged sales contract* to the arbitrator in an attempt to negate its debt. The arbitrator rejected these arguments and determined that demurrage in the amount of $90,000, calculated using the Vessel owner's statement of facts, was due and owing to Crossbow.

In order to collect this demurrage due, Crossbow commenced the present action seeking a maritime attachment of Al-Hashedi's funds. In all likelihood, if this maritime attachment is vacated, Crossbow will be unable to collect any amounts of its demurrage claim.

---

[2] The "statement of facts" is a detailed statement of the time used during cargo operations prepared by or on behalf of the master of the Vessel, which sets forth, among other items, the commencement of "laytime", all times working and interruptions. The statement of facts is the document used to determine the final freight due the Vessel owner for use of its Vessel.

4

## **ARGUMENT**

On a motion to vacate, plaintiff bears the burden of showing that the attachment should not be vacated. *See, e.g.,* C. Transport Panamax, Ltd. V. Kremikovitzi Trade E.O.O.D., 2008 U.S. Dist.LEXIS 48688, *4 (S.D.N.Y. June 19, 2008*).* To show a valid maritime attachment, plaintiff must show, among other things that it has a valid prima facie admiralty claim against the defendant. *See* Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). To determine whether a claim sounds in maritime, "courts should look to the subject matter of the [relevant] contract and determine whether the services performed under the contract are maritime in nature." Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 612, 111 S. Ct. 2071, 114 L. Ed. 2d 649 (1991). This inquiry "depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 24, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004). Defendant's obligation to pay demurrage was calculated and determined with reference to the charter party, which was incorporated into the sales contract. *See* Wanchoo Decl. Ex. A and B.[3]

Al-Hashedi contends simply that Crossbow's claim is one for breach of sales contract, which is not a maritime claim. Crossbow recognizes that a sales contract may not in certain circumstances be a maritime contract. Crossbow's claim, however, is not for breach of sales contract, but for Al-Hashedi's failure to pay demurrage. *See* C. Transport, 2008 U.S. Dist. LEXIS 48688, *8 (holding a settlement agreement that

---

[3] For example, the Pro Forma Invoice provides that discharge time "to start counting as per "Gencon" c/p terms".

5

"creates obligations concerning the payment of demurrage" "has reference to maritime service or maritime transactions… and thus is maritime in nature.")[4]

In support of its erroneous position that the obligation to pay demurrage is not a maritime contract, Al-Hashedi relies solely on Aston Agro-Industrial AG v. Star Grain Ltd., 2008 WL 3755156 (S.D.N.Y. Dec. 20, 2006). Aston Agro-Industrial, which arises out of a sales contract for the sale of wheat, is clearly distinguishable. In that case the contract contained a "demurrage" clause, but that demurrage clause unlike the present case had no relation to the demurrage obligations contained in the seller's charter with the vessel owner. The arbitration panel decided that the buyer, Star Grain, was liable to Aston Agro-Industrial for demurrage but not because Star Grain "breached any maritime obligation under the contracts… but only because the contracts were on C.I.F. Free Out terms… Consequently, Star Grain, as the buyer, assumed the risk of shipping damages and consequential delay once Aston, the seller, delivered the wheat into the carrier's custody." Id. at *4. [5] The court held that because the demurrage claim turned on the fact that Star Grain, the buyer, bore the risk of loss to the goods under a pricing provision in the contract, and not because it breached any maritime obligations. Id.

Here, and unlike Aston Agro-Industrial, the sales contract laytime and demurrage clauses that were incorporated were referable to the charter party. See e.g. Pro Forma Invoice (time to start counting as per "Gencon" c/p terms). Further, the laytime statement

---

[4] "Demurrage" is remuneration of the shipowner for the detention of its vessel beyond the number of days allowed by the charterparty." Id., citing Transatlantic Shiffahrtskonton GMBH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 386 n. 2 (2d Cir. 2000).
[5] Indeed, the question presented to the arbitral panel was "Are sellers entitled to demurrage even if they are not liable themselves for demurrage under the relevant charter parties?"

and demurrage calculation was based on the Vessel owner's "statement of facts" prepared after discharge. The calculation of demurrage could not have been completed without the Vessel owner's statement of facts. *Cf.* Aston Agro-Industrial, in which "'all ingredients for a complete laytime calculation are contained in the sales terms' without reference to the charterparty." 2006 WL 3755156 at *4. It is clear, thus, that the demurrage clause of the relevant sales contract represents a maritime obligation, and not simply a commercial pricing term as it was in Aston Agro-Industrial.

Indeed, the "principal objective" of the demurrage clause was to compensate Crossbow for its obligation to pay demurrage to the Vessel owner. *See* Final Arbitration Award at ¶ 23. In other words, although the sales contract contains non-maritime obligations (i.e., the obligation to sell and deliver the cement and Al-Hashedi's obligations to pay $72 per metric ton for the cement), the obligation to pay demurrage represents an independent maritime obligation of Al-Hashedi. This contract can thus be considered a "mixed" contract containing both maritime and non-maritime obligations. A "federal court can exercise admiralty jurisdiction over a 'mixed' contract if the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract." Folksamerica Reinsurance v. Clean Water of N.Y., Inc., 413 F.3d 307, 314 (2d Cir. 2005).

Since the demurrage clause "relates to a ship in its use as such, or to commerce on navigable waters, or to transportation by sea or to maritime employment" it constitutes a maritime contract. Brave Bulk Transport Ltd. v. Spot On Shipping Ltd., 2007 A.M.C. 2958 (S.D.N.Y. Oct. 30, 2007) (holding "freight forward contracts" within a court's maritime jurisdiction and entitled to process of maritime attachment.) Similarly, Al-

Hashedi's obligation to pay demurrage is within the maritime jurisdiction of this Court and entitles Crossbow to process of maritime attachment.

## CONCLUSION

For the reasons set forth herein, the obligation to pay demurrage is a maritime obligation within this Court's admiralty and maritime jurisdiction. Accordingly, Crossbow respectfully requests that this Court deny Al-Hashedi's motion in all respects.

Dated:  New York, NY
        July 23, 2008

                                Respectfully submitted,

                                **LAW OFFICES OF RAHUL WANCHOO**
                                Attorneys for Plaintiff
                                Crossbow Cement S.A.

                                By: _/s/ Rahul Wanchoo_____
                                     Rahul Wanchoo (RW-8725)