UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CROSSBOW CEMENT SA

                08 Civ. 5074 (HB)

      Plaintiff,


MOHAMED ALI SALEH AL-HASHEDI &
BROTHERS,

      Defendant.
------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO VACATE THE ATTACHMENT**

Defendant, Mohamed Ali Saleh Al-Hashedi & Brothers (hereinafter "Al-Hashedi" or "Defendant"), by and through its undersigned counsel, Bernstein & Bernstein, L.L.P., respectfully submits this Reply Memorandum of Law in further support of its Motion to Vacate the Maritime Attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). The Plaintiff, Crossbow Cement SA (hereinafter "Crossbow" or "Plaintiff") has failed to allege a cognizable claim in admiralty as required under Rule B. As such, Al-Hashedi's motion to vacate the attachment for lack of subject matter jurisdiction should be granted.

**PRELIMINARY STATEMENT**

The facts of this matter have been previously summarized in Al-Hashedi's main Memorandum of Law. The plaintiff, Crossbow Cement, sold a quantity of cement to defendant Al-Hashedi pursuant to a sales contract. The contract originally provided that Al-Hashedi would take delivery of the cement in Port of Aden. The parties thereafter agreed to the cargo being discharged at Berbera and Hodeidah in exchange for a lump sum payment by the defendant.

Crossbow then entered into a completely independent charter party by which it contracted with a third party ship owner to transport the cement to the destinations provided for in the sales contracts with Al-Hashedi.  The principal purpose of the sales contracts was the purchase/sale of the cement.  The principal purpose of the charter party was the ocean carriage of the cement.  Crossbow's claims in this matter arise from the sales contracts and not from the charter party.

Crossbow bases the instant Rule B action on Al-Hashedi's alleged breach of the non-maritime sales contracts.  Crossbow has not brought a claim against Al-Hashedi under the charter party, whose principal purposes was the ocean transportation of the cement by sea.  In fact, Crossbow could not do so because Al-Hashedi was not a party to the charter party.  As Crossbow's claims against Al-Hashedi arise from the non-maritime sales contracts, they are not subject to federal admiralty jurisidiction and Rule B is not an available remedy for the enforcement of Crossbow's claims.

Despite the non-maritime nature of the governing contracts, Crossbow has attempted to bootstrap its non-maritime claims into federal admiralty jurisdiction based on the fact that the contract included a demurrage clause.  It is apparently Crossbow's position that the very inclusion of a demurrage clause in the sales contracts converts the aforesaid contracts to a maritime contracts rather than a simple contracts for the sale of cement.  There is no legal support for Crossbow's position, as will be set forth.  The demurrage clause in the sales contracts upon which Crossbow bases its entire argument cannot be said to constitute the predominant purpose of the contract.  Nor can such demurrage clause even be said to constitute a maritime obligation upon Al-Hashedi, despite Crossbow's claims to the contrary.  Any liability on the part of Al-Hashedi to Crossbow for demurrage arises from and is incidental to the contract of sale of

cement and grows out of such contract, which is non-maritime in nature. There is simply no admiralty jurisdiction in this matter. Crossbow has other remedies available to it to enforce the arbitration award in its favor. However, Rule B is not one of them, as it is exclusively reserved for claims cognizable in admiralty.

## ARGUMENT

### THE ATTACHMENT SHOULD BE VACATED AS THERE IS NO ADMIRALTY JURISDICTION

**1.    Admiralty jurisdiction does not extend to sales contracts between parties which are not maritime in nature**.

While courts have found the boundaries of admiralty jurisdiction over contracts difficult to draw, the United States Supreme Court held in *Norfolk Southern Railway Co. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 21-22 (2004) that the ultimate determination of whether admiralty contract jurisdiction is to be conferred turns "on whether the principal objective of a contract is maritime commerce." Id. *See also Folksamerica Reinsurance Company v. Clean Water of New York, Inc.*, 413 F.3d 307, 315 (2d. Cir. 2005).

**2.    The inclusion of a demurrage clause within a sales contract does not convert a non-maritime sales contract to a maritime contract.**

Crossbow argues that its claim before this Court is not for breach of a sales contract, but for Al-Hashedi's failure to pay demurrage. *See, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate the Maritime Attachment, p. 4*. With all due respect to plaintiff's counsel, this position is ludicrous. Crossbow has no claim before this Court other than for an order of process to attach the defendant's goods, chattels and credits under this Court's alleged maritime jurisdiction. The alleged basis of such jurisdiction is the purported breach of a non-maritime sales contract with Al-Hashedi, a sales contract which included a

3

demurrage provision which was strictly incidental. The language of Crossbow's Verified Complaint in this matter confirms the basis of Crossbow's claim wherein it states that Crossbow incurred demurrage "[i]n performance of the Contract" at issue. *See Plaintiff's Verified Complaint, paragraph "6".* There is no claim for demurrage without first a claim for breach of the sales contract, of which the demurrage provision was merely incidental. This is a claim for breach of a sales contract for which there is no maritime jurisdiction.

Crossbow appears to recognize that it cannot prevail on the sales contract at issue as it is a non-maritime agreement. Crossbow therefore appears to take the position that any non-maritime sales contract that makes reference to, or contains, a demurrage provision is thereby converted to a maritime agreement. Crossbow erroneously cites *C. Transport Panamax, Ltd. v. Kremikovitzi Trade E.O.O.D.*, 2008 WL 2546180 (S.D.N.Y. June, 2008) in support of this position. *C. Transport* offers no such support for such position as the facts of *C. Transport* are readily distinguishable. *C. Transport* involves a claim arising from a **charter party** between a plaintiff **charterer** and defendant **vessel owners**. Demurrage allegedly accrued and the claim was submitted to arbitration in London, which resulted in a settlement agreement between the parties, lawsuits in London to enforce the settlement agreements and a default judgment. The plaintiffs thereafter obtained an ex parte order of attachment under Rule B, which the defendants moved to vacate.

Crossbow implies that *C. Transport* supports the proposition that any claim on a non-maritime contract that includes a demurrage claim necessarily implicates maritime jurisdiction. That was not the holding of *C. Transport*, however, which simply concluded that the underlying subject matter of the settlement agreement which was **the obligation of a**

4

**charterer under a charter party to pay demurrage**, related to maritime service and transactions. In other words, the court in *C. Transport* found that a settlement agreement involving a claim between a **shipper and a vessel owner for demurrage arising out of a charter party** was sufficiently related to maritime activity to invoke the maritime jurisdiction of the court. This was not a surprising conclusion. It is agreed that charter parties between a charterer and a vessel owner are maritime contracts and implicate the maritime jurisdiction of the Court. That is not the case herein, however. This claim involves a contract between a buyer and a seller for which the mode of transport is strictly incidental. As such, this claim does not fall within this Court's maritime jurisdiction and *C. Transport* offers no support for the plaintiff herein.

The defendant attempts to distinguish *Aston Agro-Industrial AG v. Start Grain, Ltd.*, 2008 WL 3755156 (S.D.N.Y. Dec. 2006) from the instant case. The court in *Star Grain* was clear. The contracts between the parties were not maritime contracts

> "because their primary objective was not the transportation of goods by sea. Instead, their primary objective was, undoubtedly, the sale of wheat. That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipped via airplane. Nor were they contracts between a seller and a shipper. In fact, Aston entered into two separate charter parties to accomplish the shipment of wheat and it was the primary objective of *those* contracts to transport wheat by sea."

*Id.* at 3. Likewise in this action.

Furthermore, as in *Star Grain*, the demurrage clauses herein do not explicitly contain any obligation on either party to compensate the other for demurrage owed to the vessel, but merely set forth the rate at which any demurrage charge would be calculated should it occur.

*See the Sales Contract of July 27, 2005, Plaintiff's Exhibit "1".*

The fact that the arbitration panel in *Star Grain* found that Star Grain was liable for the demurrage because the contracts were on a C.I.F. Free Out terms is interesting but of no real moment to the court's conclusion in that case (and should be of no moment to the Court's decision herein). The court in *Star Grain* found that the contracts at issue created no maritime obligations on Star Grain, nor any obligations severable from the non-maritime obligations, as "Star Grain's only obligations under the contracts were to pay the agreed-upon price pursuant to the stipulated payment terms, and to begin discharging the wheat when the ships arrived in port even if the ships arrived before the bills of lading were received." The court found that there was "nothing uniquely maritime about these obligations necessitating a 'neutral federal forum and uniform body of law to adjudicate rights and liabilities as they relate[] to the trafficking of seafaring vessels.'" *Star Grain* at 4.

Likewise it is precisely the case herein that the contracts at issue created no maritime obligations on Al-Hashedi other than to pay the agreed upon price and begin discharging the cement upon arrival in port. The reference in the demurrage clause to Gencon charter party terms does nothing more than refer to a calculation for any demurrage accrued. It does not make the obligation to pay demurrage an independent maritime obligation of Al-Hashedi.

Crossbow also cites *Brave Bulk Transport Ltd. V. Spot On Shipping, Ltd.*, 2007 WL 3255823 (S.D.N.Y. Oct. 2007) in support of its erroneous position that any claim on a non-maritime contract that includes a demurrage claim necessarily implicates maritime jurisdiction. *Brave Bulk*, again, is readily distinguishable from the facts of this case. *Brave Bulk* involved

forward freight agreements, which are commitments between **ship owners, charterers and traders** to perform a **future shipping service** for the purpose hedging and managing market risks relating to **the use and employment of seafaring vessels** in a volatile shipping market.  In other words, the freight forwarding agreements in *Brave Bulk* were agreements between shippers, charterers and traders **involving the use of vessels in shipping services**.  It is hardly surprising that the court in *Brave Bulk* found that such agreements were sufficiently a part of maritime commerce to confer admiralty jurisdiction.  There is no such direct connection to maritime commerce in the sales contracts at issue herein.

> We respectfully point out to the Court that the plaintiff has failed to cite a single case on point that supports its proposition that an obligation to pay demurrage contained within a non-maritime sales contract involves a breach of maritime obligations that are severable from the non-maritime elements of the contract sufficient to invoke admiralty jurisdiction.   As noted above, *C. Transport* was a case involving a dispute arising from a charter party between a charterer and vessel owners and *Brave Bulk* involved forward freight agreements between ship owners, charterers and traders to perform future shipping services.  Neither of these cases are on point with this case or the plaintiff's main contention.  The plaintiff cites no other case in which a demurrage clause contained within a non-maritime sales contract was found to implicate maritime jurisdiction.  This is due to the fact that no such case exists.

> There are cases, however, (in addition to *Star Grain*) which directly support the plaintiff's position that an original non-maritime contract of purchase and sale does not become maritime merely because the contract contains a demurrage provision.  In *French Republic v. Fahey*, 278 F. 947 (D.C.Md. 1922), the French Republic entered into a contract with the

defendant to purchase a quantity of rye. The French Republic entered into a separate charter party, containing a demurrage clause, with a vessel which was to receive delivery of the grain in Baltimore. Upon presentation of the vessel in Baltimore, the defendant sellers were late in delivering the grain as a consequence of which the buyer became liable to the vessel owner for demurrage. The defendant seller denied liability for the demurrage and asserted that there was no admiralty jurisdiction in the action as "they were merely sellers of merchandise, and there was nothing maritime about the bargain they made. The circumstance that the buyer wanted the grain transported by water did not alter the essential nature of the agreement." *Id.* at 948. The court agreed, finding that, as the sellers never made any agreement with the vessel "an original nonmaritime contract of purchase and sale does not become maritime merely because the buyer may be entitled to recover from the seller a sum which it had to pay because the default of the sellers in their nonmaritime undertaking caused it, in turn, to break a maritime engagement." *French Republic* at 949.

Similarly, in *Woodcraft Works, Limited v. United States*, 139 Ct.Cl. 149, 152 F.Supp 82 (United States Court of Claims, 1957), the plaintiff entered into a contract with the defendant to sell lumber, which was to be delivered to Okinawa. Plaintiff apparently entered into a charter party with a vessel, which included a demurrage provision. Plaintiff's obligation to defendant was to deliver the lumber on board a vessel, with instructions to deliver it as directed and pre-pay the freight. After this had been done and the bill of lading sent the defendant, the title of the goods passed to the defendant. There was a delay in unloading the vessel at its destination, as a result of which demurrage accrued for which the plaintiff was liable under the charter party. The plaintiff contended that since the delays were the fault of the

defendant, the defendant was obligated to indemnify it. The defendant moved to strike the action on the ground of no admiralty jurisdiction. The court agreed, finding that "[a]n action by the owner of the vessel would be maritime, but not an action by the shipper against the consignee. The liability of the consignee to plaintiff arises only because of the contract of sale of the lumber, and that, of course, is not a maritime contract. Its liability to plaintiff for demurrage was incidental to the contract of sale and grows out of it. Plaintiff's action here is founded upon the contract of sale, and is not a maritime cause of action." *Woodcraft Works* at 83.

Likewise, in the instant matter, the liability of Al-Hashedi arises only because of the contract of the sale of cement. Al-Hashedi's liability to Crossbow for demurrage is incidental to the contract of sale and grows out of it. The plaintiff's action herein is founded upon the contract of sale, and is not a maritime cause of action. *Aston Agro-Industrial AG v. Star Grain LTD.*, 2006 WL 3755156 (S.D.N.Y. 2006); *French Republic v. Fahey*, 278 F. 947 (D.C.Md. 1922); *Woodcraft Works, Limited v. United States*, 139 Ct.Cl. 149, 152 F.Supp 82 (United States Court of Claims, 1957).

In sum, in the instant case a seller of cement (Crossbow) is attempting to recover damages from the buyer of cement (Al-Hashedi) as there were problems with delivery. The fact that the delivery happened to take place on a ship is completely incidental to the purpose of the contract, namely, the sale of cement.

As the primary objective of the contracts at issue was the sale of cement, not maritime commerce, there is no maritime jurisdiction in this matter.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, it is specifically requested that

this Court grant defendant, Mohamed Ali Saleh Al-Hashedi & Brothers' motion to vacate the attachment together with such further and different relief as this Court may deem just and proper.

Dated: New York, New York
August 1, 2008

                    BERNSTEIN & BERNSTEIN, L.L.P.
                    Attorneys for Defendant

By:        s/
           STEPHEN JACOBSON (SJ 3615)
           BERNSTEIN & BERNSTEIN, L.L.P.
           19 West 44th Street, Suite 1500
           New York, New York 10036
           (212) 608-0053 - phone
           (212) 608-0054 - fax
           stephjacob@aol.com

To:    Law Offices of Rahul Wanchoo
        Attorneys for Plaintiff
        Empire State Building
        350 Fifth Avenue, 59th Floor
        New York, New York 10118
        (646) 593-8866 - phone
        (212) 618-0213 - fax
        rwanchoo@wanchoolaw.com